IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD WILFRED STOVER, JR., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 16-1265 |
| | ) | Judge Conti |
| COMMISSIONER OF SOCIAL SECURITY, | ) | Magistrate Judge Mitchell |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

I.   Recommendation

It is respectfully recommended that the plaintiff's motion for summary judgment (ECF No. 14) be granted, that the defendant's motion for summary judgment (ECF No. 18) be denied and that this matter be remanded to the Commissioner of Social Security for further review pursuant to Sentence Four of 42 U.S.C. § 405(g).

II.   Report

On August 23, 2016, Plaintiff, Richard Wilfred Stover, Jr., by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), for review of the Commissioner's final determination disallowing his claim for Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381.

The instant application for Supplemental Security Income Benefits was filed on May 2, 2013, alleging that Plaintiff had been disabled since March 9, 2013 (R. 184-192). Benefits were denied and on December 24, 2013 Plaintiff requested a hearing (R. 133-137, 142-144). A hearing was held on September 24, 2014 (R.50-112).  In a decision filed on October 8, 2014, an Administrative Law Judge denied benefits (R. 33-45), and on November 1, 2014, Plaintiff requested reconsideration of that determination (R. 31).  On June 22, 2016, the Appeals Council

affirmed the prior determination (R.1-4). The instant complaint was filed on August 23, 2016.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. § 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Johnson v. Comm'r, 529 F.3d 198 (3d Cir. 2008), and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir. 1999).

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. § 1381; Chalmers v. Shalala, 23 F. 3d 752 (3d Cir. 1994). To be eligible for such benefits, an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

As set forth in 20 C.F.R. § 416.905(a) disability is defined as:

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

In addition, a person will be considered disabled if he/she is

(a) ... permanently and totally disabled as defined under a State plan approved under title XIV or XVI of the Social Security Act, as in effect for October 1972; (b) ... received aid under the State plan ... for the month of December 1973 and for at least one month prior to July 1973; and (c) ... continue[s] to be disabled as defined under the State plan.

20 C.F.R. § 416.907.

A physical or mental impairment is defined in 20 C.F.R. § 416.908 as an:

impairment [which] result[s] from anatomical, physiological, or psychological abnormalities which [are demonstrated] by medically acceptable clinical and laboratory diagnostic techniques.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

At the hearing held on September 24, 2014, Plaintiff appeared with counsel (R. 52) and testified that he was born on March 17, 1968 (R. 59); that he graduated from high school (R. 60); that he experiences difficulty with writing and math (R. 62, 66) and that he received food stamps and medical coverage (R. 63).

Plaintiff also testified that he suffers from headaches, dizziness, high blood pressure, high cholesterol, depression, anxiety and right leg and left arm problems (R. 65); that he takes medication (R. 66, 72, 74, 77); that he is dizzy all the time and becomes dizzy when he stands up or sits down (R. 72, 87); that he has experienced anxiety for his entire life (R.79); that stress makes him nervous (R. 103); that he suffers from hallucinations (R. 83); that he experiences feelings of worthlessness (R. 82); that he has difficulty thinking, concentrating or focusing (R. 84); that he can walk for about 100 yards, stand for about fifteen minutes, sit for about an hour and lift about two gallons (R. 88, 90, 91, 92); that he cannot perform reading, writing or typing (R. 80); that he drops items (R. 70); that he attends AA meetings (R. 96); that he watches

3

television (R. 97) and that he last worked in 2008 (R. 64).

At the hearing a vocational expert was called upon to testify (R.105-110). He defined Plaintiff's limited past work as construction work which is considered very heavy and unskilled (R.106). When asked to consider a person of Plaintiff's age, education and work experience who is capable of performing medium work and who can stand or walk for approximately six hours and sit for approximately six hours but had to avoid hazards, the witness replied that such an individual could not perform Plaintiff's past work but would be able to perform a large number of jobs existing in the economy (R. 106-107); if that same individual was limited to light work, the expert again concluded that there were many jobs he could perform (R. 107-108). The witness also testified that if the individual could not have any interaction with the public or coworkers and could not tolerate supervision, he could not be employed (R. 108).

In addition, certain other evidence was considered.

The records from the State Correctional Institution at Mercer where Plaintiff was incarcerated for the period from May 9, 2012 through January 4, 2013 reflect a history of urethral stricture, deep vein thrombosis, right leg rod insertion as well as mental health treatment (R. 259-270).

Plaintiff was hospitalized for fifteen days and subsequently treated at Allegheny General Hospital between March 9, 2013 and March 25, 2013 following a dirt bike accident in which he was not wearing a helmet. A hemicraniectomy and other surgical procedures were performed (R. 364-435). He was then transferred to HealthSouth Harmarville Rehabilitation Hospital where he remained until April 19, 2013 (R. 271-363).

In a radiology report dated May 22, 2013, a small right parietal subdural hematoma was noted (R. 449-459). Plaintiff was evaluated at Metropolitan ENT Associates on May 31, 2013.

A left hearing loss was diagnosed (R. 493-501).

Plaintiff's left arm was evaluated by Dr. William Hagberg on June 5, 2013 and an ulnar nerve entrapment was diagnosed (R. 502-504).

A psychological evaluation conducted on October 17, 2013 and October 30, 2013 noted moderate to marked limitations in carrying out instructions. Cognitive and mood disorders were also reported (R. 567-577).

Plaintiff was treated at the UPMC Department of Neurology on October 22, 2013 and November 1, 2013 where an impression of dizziness, headaches and questionable seizure disorder were noted. An EEG was "unremarkable" (R. 554-566, 578-580).

Plaintiff was treated by Dr. Gordon Gold between May 17, 2013 and June 11, 2014 for a subdural hematoma and depression. Physical medicine and rehabilitation consultations were recommended (R. 436-448, 581-629, 735-743).

Plaintiff was provided post-operative care by Dr. Khalid Aziz between March 9, 2013 and July 18, 2013. He was reported as doing well post-operatively. Some hearing loss and left arm numbness were also noted (R. 460-492, 515-545).

Plaintiff was treated at Butler Memorial Hospital between July 15, 2013 and June 20, 2014 for a subdural hematoma which was improving. He checked himself into the hospital reporting suicidal thoughts on June 16, 2014. A major depressive disorder, severe psychosocial and environmental problems were noted. No intracranial abnormalities were observed (R. 691-729).

Plaintiff was treated at Mercy Behavioral Health between January 7, 2014 and June 23, 2014 for anxiety, recurrent depression and post-alcohol abuse. It was observed that Plaintiff was unable to work (R. 630-672, 744-751).

5

Plaintiff was evaluated by Dr. Barbara Swenson McManus on June 24, 2014 and a diagnosis of dizziness, headaches, questionable seizure disorder, status post severe head injury in March 2013, history of subdural hemorrhage and hallucinations was made (R. 752-760).

Plaintiff was evaluated at the Irene Stacy Community Health Center between July 2, 2013 and August 7, 2014 where diagnoses of anxiety and depression, impulse-control disorder, alcohol dependence in early remission and traumatic brain injury were diagnosed (R. 505-514, 546-553, 673-690).

Plaintiff was treated at the Butler Memorial Hospital emergency room on August 21, 2014 for a right knee injury after he fell. No fracture was observed (R. 761-770).

Plaintiff was evaluated at Tri-Rivers Surgical Associates on September 15, 2014 and October 16, 2014 for right knee posttraumatic osteoarthritis and right ankle and foot pain (R. 771-773, 775).

Based on the evidence presented, the Commissioner determined:

The claimant has not engaged in substantial gainful activity since March 27, 2013…

The claimant has the following severe impairments: status-post traumatic brain injury (TBI), headaches, vertigo, depression and anxiety.

The impairments cause significant limitations on the claimant's abilities to perform basic work activities, and are, therefore, severe.

The claimant has been diagnosed with hearing loss in his left ear and mild posttraumatic arthritis in the right knee…. The claimant also testified that he was involved in a serious accident over ten years ago involving his right leg, and since that time, his knee and leg hurt and swell. However, the claimant only recently began complaining of right knee pain during an August 2014 emergency room visit. His physical exam was largely normal but for some right knee tenderness and an X-ray showed only mild arthritic changes. The claimant consulted with an orthopedist, who noted only mildly decreased range of motion on exam. He diagnosed the claimant with posttraumatic arthritis and offered to give the claimant a knee injection, but the claimant refused all treatment.

\*\*\*

The claimant reported some left arm numbness in mid-2013 to his neurosurgeon, Dr. Aziz, but his physical exams were normal, and the claimant has not reported any additional problems with his left arm or elbow since that time. His neurological exams have been normal. The claimant's allegations of seizures and left elbow nerve entrapment are not based on objective medical evidence and are not medically determinable impairments.

\*\*\*

The claimant's TBI does not meet listing 11.18 for cerebral trauma because it has not resulted in a seizure disorder, sensory or motor aphasia, significant or persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements or gait and station, or an organic mental impairment…

In activities of daily living, the claimant has mild restrictions …
In social functioning, the claimant has mild difficulties…

With regard to concentration, persistence or pace, the claimant has moderate difficulties…

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration…

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work [with some restrictions]…

The claimant testified that he is unable to work due to a brain injury causing dizziness and headaches, poor concentration and memory, depression, and anxiety. The claimant testified that he was involved in a dirt bike accident in March 2013 and required two brain surgeries. Since the accident, he has had frequent headaches and felt some dizziness on a daily basis. He is easily confused and has trouble staying on task and remembering things. The claimant testified that he occasionally has crying spells and that stress and anxiety interfere with his ability to think clearly.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible…

While the claimant was involved in a serious accident in March 2013, his

physicians have reported that he recovered extremely well and the symptoms he reported during the hearing are much more extreme than those he has reported to his treating physicians. The claimant was hospitalized in March 2013 after a dirt bike accident caused a subarachnoid hemorrhage and right sided subdural hematoma. The claimant underwent a decompressive hemi-craniectomy and, after discharge, spent several weeks in inpatient physical rehabilitation. At discharge from rehab, the claimant was independent in eating, grooming, bathing, dressing, and toileting. He was able to climb stairs with supervision.

After discharge, the claimant followed up with Dr. Aziz, his neurosurgeon, and reported that he was doing well… Dr. Aziz felt that the claimant was ready for his cranioplasty to repair his skull … Dr. Aziz performed this surgery in May 2013. Following the surgery, the claimant reported only minimal headaches and some left-sided hearing loss to Dr. Aziz. The claimant's physical exam was stable, and a CT scan of his head showed only a small 5mm subdural hematoma.

By July 2013, the claimant reported that his headaches had resolved but he also reported occasional problems with balance and tinnitus. The claimant's physical exam was again stable, and Dr. Aziz felt that the claimant was doing very well from a neurological standpoint and discharged him from his care. A repeated CVT showed almost complete resolution of the claimant's subdural hematoma. The claimant followed up with his primary care physician, Dr. Gold, and reported occasional dizziness. Dr. Gold referred the claimant to local neurologist for follow-up care… The claimant's physical exam was completely normal.

At his neurological appointment with Dr. Swenson, the claimant complained of occasional dizziness and one mild headache a week. On exam, the claimant had normal cranial nerves, tone, strength, sensation, reflexes and gait. He had no problems with tandem walking… At his most recent appointment with Dr. Swenson, the claimant reported mild headaches and dizziness as well as episodes of seeing spots…

In regards to the claimant's mental impairments, the claimant first sought treatment in July [2013], reporting problems with anxiety, racing thoughts, worry and irritability… [B]y October 2013, the claimant was feeling better with better mood and more energy. His mental status exam was normal but for occasional racing thoughts. The claimant attended consultative psychological exam that same month. On exam, his mood was appropriate, but he reported poor recall and occasionally had off track thoughts. Despite this, the claimant was able to perform serial seven subtractions without problem.

The claimant also underwent a psychiatric evaluation in January 2014 with Dr. Jurczak, reporting problems with motivation, anger, and sleep. On exam, the claimant had some problems with concentration and distractibility. The claimant was prescribed Remeron, but failed to attend any additional appointments with this psychiatrist. The claimant did not seek any additional mental health treatment

8

until May 2014. The following month, he was hospitalized for six nights, reported depression and some suicidal thoughts. His medications were adjusted, and the claimant improved. By discharge, he was reporting that his homelessness was his largest problem and he did not need medication…

The claimant testified to a wide range of daily activities during the hearing, including personal care, attending AA meetings and church, simple meal preparing, and spending time with friends. While he reported very significant symptoms of headaches, dizziness, and anxiety at the hearing, he has not reported symptoms of similar severity to his physicians, which suggests some exaggeration in his testimony. The claimant has a poor work history.

As for the opinion evidence, Dr. Houk, the consultative examiner felt that the claimant had marked limitations in social interaction and responding to work changes. This opinion is given little weight in this assessment because it is a snapshot assessment of only one day in the claimant's life, and is not consistent with the other medical evidence of record showing that the claimant's mental status exams were largely normal and his symptoms improved with medication…

AM-13066 sets forth SSA policy on utilizing GAF scores to determine the residual functional capacity. It casts considerable doubt upon the use of these scores in determining the residual functional capacity…

The State agency reviewing psychologist felt that the claimant was able to meet the basic mental demands of competitive work in spite of his impairments with only moderate limitations in concentration, persistence, or pace…

The claimant's subjective complaints are less than fully credible and the objective medical evidence does not support the alleged severity of symptoms… While the claimant testified to daily problems with headaches, dizziness, weakness, and anxiety/depression, he has not reported this to his physicians, which substantially undermines the credibility of his testimony…

The claimant is unable to perform any past relevant work …

The claimant… was 45 years old, which is defined as a younger individual… on the date the application was filed.

The claimant has at least a high school education and is able to communicate in English…

Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

economy that the claimant can perform…

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate …

(R. 38-45.)

After the ALJ entered his decision on October 8, 2014, Plaintiff's counsel (George Clark) submitted a letter to the Appeals Council, dated December 30, 2014 (R. 250-256), and enclosed records from Dr. William Saar of Tri Rivers Surgical Associates dated October 16, 2014 which revealed "advanced arthritic change in the talonavicular region and the subtalar region and claimant was diagnosed with right ankle/foot pain with talonavicular degenerative joint disease as well as subtalar degenerative joint disease." (R. 251, 775.) After this, Mr. Clark withdrew his appearance, Plaintiff obtained new counsel (Christine Nebel), and she wrote a letter to the Appeals Council on January 7, 2015 in which she requested an opportunity to submit further records and/or argument on the plaintiff's behalf (R. 18). On May 22, 2015, Ms. Nebel sent the Appeals Council a letter in which she indicated that she was attaching two additional pieces of evidence: a physical capacity evaluation completed by Plaintiff's primary care physician, Gordon Gold, on January 20, 2015; and a neuro-psychological evaluation conducted by J. Audie-Black, Ph.D. and Glen Getz, Ph.D., ABN, board-certified clinical neuropsychologist, dated February 24, 2015. (R. 258.)

In its decision dated June 22, 2016, the Appeals Council stated that:

We also looked at Medical Records from Glade Run Lutheran Services dated January 12, 2015 through March 29, 2016 (69 pages); Physical Capacity Evaluation from Gordon Gold M.D. dated January 20, 2015 (4 pages); Neuro-Psychological Evaluation from J. Audie-Black, Ph.D. dated February 24, 2015 (10 pages); and Employability Assessment Form from Dr. Humphreys dated April 4, 2016 (3 pages). The Administrative Law Judge decided your case through

10

> October 8, 2014. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before October 8, 2014.
>
> If you want us to consider whether you were disabled after October 8, 2014, you need to apply again. The new information you submitted is available in our electronic file for you to use in your new claim….
>
> You have the right to file a new application at any time, but filing a new application is not the same as appealing our action. If you disagree with our action and file a new application instead of appealing, you might lose some benefits or not qualify for any benefits. So, if you disagree with our action, you should file an appeal within 60 days.

(R. 2.) Plaintiff did file another application for Supplemental Security Income on July 7, 2016. According to records he has submitted: he requested a hearing on November 28, 2016; a hearing was held on May 24, 2017, at which Plaintiff, his friend John Lydon, and a vocational expert testified; and in a decision dated July 17, 2017, the ALJ awarded him benefits on the basis that he was disabled as of the application date. (ECF No. 27 Ex. 1.)

Plaintiff noted that the Appeals Council did not include any of this additional evidence in the administrative record (only Ms. Nebel's letter). Counsel attached the physical capacity evaluation completed by Dr. Gold and the neuro-psychological evaluation conducted by J. Audie-Black and Glen Getz as an exhibit to the brief in support of Plaintiff's motion for summary judgment (ECF No. 15 Ex. 1). Plaintiff argues that the Appeals Council violated his due process rights by excluding this material from the administrative record. In addition, Plaintiff argues that: 1) the Administrative Law Judge and the Appeals Council erred by finding the Plaintiff's left ear hearing loss, right leg injury and left arm and finger numbness to be "non-severe impairments"; 2) the ALJ and the Appeals Council improperly disregarded the medical opinions of Plaintiff's treating physicians and the consultative examiner; 3) the residual functional capacity (RFC) erroneously fails to include the three impairments cited above, which

11

would have precluded him from performing medium level work or interacting with the public, supervisors and co-workers; 4) the ALJ erred in discrediting his subjective complaints of pain; and 5) the ALJ disregarded testimony of the vocational expert and relied on an improper hypothetical which failed to take into account Plaintiff's use of a cane, having to miss two days of work per month, being off task for more than 10% of the time and ability to use his non-dominant upper extremity only occasionally, all of which would have led to the conclusion that he was unable to engage in substantial gainful activity.

The Commissioner argued that the Appeals Council does not have to incorporate additional evidence if it is not relevant and that it appropriately informed Plaintiff that he could file a new claim, and Plaintiff cannot contend that his due process rights were violated because he has submitted the additional material in this case. The Commissioner further contends that courts do not review the Appeals Council's decision to deny review; rather they can examine the additional evidence and remand pursuant to Sentence Six, but only if the plaintiff demonstrates that the evidence is "new" and "material" and that he has "good cause" for failing to present it to the ALJ. With respect to Plaintiff's other arguments, the Commissioner responds that: 1) the ALJ reasonably determined that Plaintiff's left ear, right leg and left arm and finger issues were not severe impairments and, in any event, even if they were, the exclusion of these impairments was harmless error because they did not further limit the Plaintiff's RFC; 2) the ALJ properly excluded the consultative examiner's opinion because she only examined the Plaintiff one time and her conclusions were inconsistent with those of other sources; 3) the ALJ's statement that after January 20, 2014, Plaintiff "did not seek any additional mental health treatment until May 2014" was not in error, as Plaintiff contends, because the appointments in January and February were therapy sessions with a social worker, and the ALJ's statement that Plaintiff's GAF score

was 55 when he was discharged from the hospital in June 2014 was not in error because the evidence (that his score varied from 35 to 55) was subject to interpretation and, in any event, the ALJ accorded GAF scores "little weight"; 4) the ALJ properly made credibility determinations and Plaintiff points to no evidence to support allegedly debilitating symptoms; and 5) the ALJ properly determined Plaintiff's RFC and hypothetical questions based on the reasoning cited above.

In a reply brief, Plaintiff argues that: 1) the Appeals Council erred in excluding the cited evidence into the administrative record and the evidence meets the standards of being "new" and "material" and could not have been produced earlier and the Commissioner cannot rely on the fact that the plaintiff submitted some of the missing evidence with his brief (he did not submit all of it); 2) the left ear hearing loss, right leg injury and left arm and finger numbness could affect his RFC; 3) the consultative examiner did not just "take a snapshot" as the ALJ concluded but looked at other evidence; and 4) although an ALJ can reject a plaintiff's subjective complaints of pain, the ALJ in this case provided no reasons for doing so.

On May 25, 2017, a Report and Recommendation ("R&R") was filed, recommending that both motions for summary judgment be denied and that the matter be remanded to the Commissioner for review of the new material evidence pursuant to Sentence Six of 42 U.S.C. § 405(g). (ECF No. 21.) On June 7, 2017, Defendant filed objections (ECF No. 22) to the R&R, to which Plaintiff responded on June 22, 2017 (ECF No. 23). On July 27, 2017, Chief Judge Conti filed a Memorandum Opinion (ECF No. 24) and Order (ECF No. 25) which rejected the R&R on the ground that Plaintiff did not demonstrate good cause for failing to submit the new and material evidence before the ALJ issued the decision in the case. Judge Conti referred the matter back to the undersigned to address Plaintiff's remaining arguments.

13

The Court permitted the parties to submit further briefing if they desired. On August 18, 2017, Plaintiff submitted a further reply brief (ECF No. 27). Defendant did not submit any further briefing.

Plaintiff argues that: 1) the ALJ and Appeals Council mischaracterized and ignored the evidence regarding his knee and ankle X-rays; 2) the ALJ erroneously indicated that he made no further reports about left arm and finger numbness since mid-2013; 3) the ALJ and Appeals Council improperly disregarded the medical opinions of his treating physicians and a consultative evaluator, ignores mental health appointments and misreads GAF scores; 4) the ALJ erred in determining the RFC without any consideration of the additional impairments noted above, even if not severe; and 5) the ALJ relied on incomplete hypothetical questions to the vocational expert that did not reflect all of Plaintiff's impairments and limitations.

The ALJ made numerous substantive errors in this case. First, he indicated that Plaintiff had "mild posttraumatic arthritis in the right knee" (R. 38), but the evidence also noted "2 transversely oriented metallic fixation screws in the proximal tibia" and "moderate sized suprapatellar joint effusion." (R. 762.) Moreover, an X-ray of Plaintiff's right ankle revealed "advanced arthritic change in the talonavicular region as well as the subtalar region." (R. 775.)[1] The decision contains no discussion of Plaintiff's ankle impairment. It is noted that in Plaintiff's more recently filed application (in which he was awarded benefits), the ALJ explicitly recognized "right leg injuries" as a severe impairment (ECF No. 27 Ex. 1 at 3) based upon the same injuries reported in this application.

Second, the ALJ erroneously indicated that Plaintiff made no further reports about left

---

[1] It is true that this ankle X-ray was taken by Dr. Saar on October 16, 2014, which was eight days after the ALJ issued his decision. Nevertheless, this appointment was a referral from Dr. Gold, who examined Plaintiff on September 15, 2014 (one week before the hearing) and noted "likely ankle arthritis" (R. 772) and thus this X-ray should have been taken into consideration.

14

arm and finger numbness since mid-2013 (R. 39), but in fact he reported it to a neurologist on October 22, 2013 (R. 555) and he was diagnosed with left ulnar neuropathy with grip strength of only 60 pounds on the left arm (as compared to 120 on the right) and pinch strength of only 15 pounds on the left (as compared to 20 on the right) with a positive Tinel's along the cubital tunnel of his left shoulder (R. 502-03). Although Defendant acknowledges that this information was omitted, it argues the evidence would not have affected the outcome. However, the vocational expert testified that if an individual was only able to use his non-dominant upper extremity occasionally, he would not be able to perform the medium level jobs that the ALJ found that Plaintiff could perform (R. 110). Thus, this evidence was relevant and potentially outcome determinative.

Third, the ALJ erroneously stated that Plaintiff "did not seek any additional mental health treatment until May 2014." (R. 43.) Plaintiff points out that he had mental health appointments at Mercy Behavioral Health on January 10, 2014, January 20, 2014, February 3, 2014 and February 17, 2014 (R. 654-68). Defendant argues that these appointments were not with Dr. Jurczak, but other staff at the clinic, but has not explained the significance of this distinction. In any event, it is not what the ALJ said. See Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (the Commissioner cannot augment an ALJ's decision with additional factual findings or legal justifications not presented to the ALJ).

In addition, the ALJ rejected the opinion of consultative examiner Dr. Houk, who indicated that Plaintiff had "marked" limitations in social interaction and responding to work changes (R. 568), on the ground that "it is a snapshot assessment of only one day in the claimant's life and is not consistent with the other medical evidence of record showing that the claimant's mental status exams were largely normal and his symptoms improved with

15

medication." (R. 43.) However, Dr. Houk stated that, as part of her evaluation, she was provided with the Psychiatric Evaluation from the Irene Stacy Community Health Center dated July 2, 2013 along with progress notes from Dr. Gordon Gold and the Allegheny General Hospital Department of Neurosurgery letter dated May 23, 2013 (R. 271). Thus, the ALJ's statement that Dr. Houk's assessment was merely a "snapshot" of one day in Plaintiff's life is not supported by the evidence and it should not have been rejected on that basis.

Fourth, the ALJ improperly determined that Plaintiff had the RFC to perform medium work with limitations (R. 40-41). But the ALJ did not take into consideration Plaintiff's right leg injuries and left arm numbness, as explained above. With these additional limitations, it is highly likely that Plaintiff would not have been given such an RFC and been found "not disabled." Indeed, in his more recent application, the ALJ concluded that Plaintiff had the RFC to perform <u>light</u> work with numerous limitations (ECF No. 27 Ex. 1 at 3), leading to a conclusion that there were no jobs that exist in significant numbers in the national economy that he could perform (<u>id.</u> at 5). Finally, the questions to the vocational expert did not reflect all of Plaintiff's impairments and in fact the expert testified that with additional restrictions there would not be jobs that exist in significant numbers in the national economy that he could perform (R. 108-10).

Given these significant errors in the record, it cannot be said that the Commissioner's conclusions in this matter are supported by substantial evidence. Therefore, this matter should be remanded to the Commissioner for further review.

For these reasons, it is respectfully recommended that the plaintiff's motion for summary judgment (ECF No. 14) be granted, that the defendant's motion for summary judgment (ECF No. 18) be denied and that this matter be remanded to the Commissioner of Social Security for further review pursuant to Sentence Four of 42 U.S.C. § 405(g).

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by September 20, 2017. Any party opposing the objections shall file a response by October 4, 2017. Failure to file timely objections will waive the right of appeal.

Respectfully submitted,

s/Robert C. Mitchell_____
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: September 6, 2017